OPINION OF THE COURT
Ira Gammerman, J.
On April 21,1983, after 11 days of trial, a jury returned a verdict against both defendants. Damages of $1,500,000 were awarded to plaintiff Arlene Crisher (reduced to $1,125,000 because of her negligence) and of $150,000 to plaintiff Earl Crisher (reduced to $112,500). Both defendants have moved to set the verdict aside and to dismiss the complaint, and have submitted printed briefs. The brief of defendant Spak is quite comprehensive and runs some 80 pages. The brief of defendant Lehman is considerably shorter, 22 pages. Plaintiffs’ printed brief is 40 pages.
*356 THE LIABILITY OF DEFENDANT SPAK:
FAILURE TO PROVIDE ADEQUATE INFORMATION.
In November, 1974, plaintiff Arlene Crisher consulted defendant Spak, an orthopedic surgeon, in connection with a problem involving her right foot. Surgery was recommended and performed. Following the operation, Mrs. Crisher continued to have difficulty with her foot and continued to consult Dr. Spak from December, 1974 through June, 1975. In May, 1975, the doctor referred her for electrodiagnostic studies which revealed nerve involvement. He then spoke to his patient on the telephone and advised her that her pain and discomfort were being caused by a “pinched nerve” and that the problem could be treated with surgery which he recommended. Mrs. Crisher was feeling very little pain at the time of that conversation and decided not to undergo an additional operation.
What the doctor failed to advise his patient at the time was that he did not know what was causing the pinched nerve and that surgery was necessary to make that determination. Further, the doctor did not tell her that one of the possible causes of her pain was a tumor. He testified that, indeed, he did not even consider the possibility of a tumor.
Plaintiff offered testimony from an expert witness, an orthopedic surgeon, that Dr. Spak’s failure to explain to his patient that surgery was necessary to determine the cause of her problem was a departure from accepted standards of medical practice. Plaintiffs’ expert testified that it was a further departure for defendant Spak not to advise Mrs. Crisher of the possible causes of her difficulty, including the fact that she might have a tumor.
The jury, in returning a special verdict, found defendant Spak negligent in both respects. It is this finding that defendant Spak attacks via this motion.
The jury was charged, without exception by defendant Spak, that a physician has a duty to disclose to his patient all of the information that a reasonably prudent doctor knows or should know would be regarded as significant by a reasonable person, and that, if a patient should sustain injury which results from the doctor’s failure to advise the *357 patient of sufficient information so that the patient can make an informed choice with respect to recommended surgery, the doctor may be liable for the injuries that are the result of that omission. Indeed, no exception was taken to the submission of question 1 (a) to the jury. That question reads as follows: “Was Dr. Spak negligent in June, 1975: (a) in not explaining to Mrs. Crisher that surgery was necessary to determine the cause of her pain, swelling and nerve involvement?”
Defendant Spak now argues that both the instructions and the submission of the question were erroneous. He claims that the charge and question impose a new duty on physicians, a duty which defendant Spak maintains is an improper extension of the doctrine of informed consent.
On the contrary, the jury was properly instructed and the duty imposed on defendant Spak was merely the traditional duty to exercise reasonable care in dealing with his patient and to conduct those dealings in accord with accepted standards of medical practice. The claim advanced by plaintiffs here is based on negligence and not on the performance of a procedure without informed consent.
Although the leading case in this area, Truman v Thomas (27 Cal 3d 285), discusses in some detail an informed consent case, Cobbs v Grant (8 Cal 3d 229), Truman, which holds that a physician may be liable for failing to inform his patient of the material risks of not consenting to a recommended pap smear, speaks not in terms of informed consent but rather of a breach of the physician’s duty of due care. The central issue, as framed by the majority in Truman (27 Cal 3d, at p 290) was: “whether Dr. Thomas breached his duty of care to Mrs. Truman when he failed to inform her of the potentially fatal consequences of allowing cervical cancer to develop undetected by a pap smear.” A breach of the duty of due care is negligence, not a lack of informed consent.
Defendant Spak, appreciating that the Truman holding is fatal to his argument, urges that the court adopt the position taken by then Justice (formerly National Security Advisor and now Secretary of the Interior designee) Clark in the Truman dissent. Justice Clark argued that the duty (of due care) imposed on the defendant in Truman was too *358 onerous and that: “Explaining the purposes of each procedure to each * * * patient will obviously take hours if not days.” (27 Cal 3d, at p 298.)
What Justice Clark and defendant Spak fail to appreciate is that such explanation is necessary only in those few cases in which a patient refuses to undergo a procedure or to submit to a diagnostic test which the physician knows or should know is important to the well-being of the patient. This need not take hours, much less days, but only a few minutes. Here, for example, all Dr. Spak need have told his patient was: “Mrs. Crisher we do not know what is wrong with your foot. It may be many things, including a tumor. It is important to your health that we find out. The only way we can do that is to operate.”
A doctor has the duty to exercise reasonable care. That duty can require the doctor, when the patient refuses advisable or necessary surgery, to explain to that patient the reasons why the surgery is recommended and the risks involved if the doctor’s recommendation is not followed.
Here the jury found that defendant Spak did not exercise due care in that he was negligent in not giving appropriate explanation and advice to his patient. That finding should not be disturbed.
WAS THE NEGLIGENCE OF DEFENDANTS A PROXIMATE CAUSE OF INJURY TO PLAINTIFF ARLENE CRISHER?
Subsequent to her conversation with Dr. Spak in June, 1975, plaintiff Arlene Crisher did not see him again until early 1976. In July, 1975 she consulted codefendant Dr. Martin Lehman. There is a factual dispute (to be discussed later in this opinion) as to what recommendation Dr. Lehman made at that time.
In January, 1976, Mrs. Crisher visited Dr. Lehman again and then, in February, 1976, returned to Dr. Spak. At the time of this visit the diagnosis of a tumor was made. Mrs. Crisher then consulted another doctor and in March, 1976, after a biopsy revealed that the tumor was malignant, underwent a below-the-knee amputation of her right leg. Plaintiffs offered proof that had she undergone surgery in June or July, 1975, her tumor would have been discovered at an earlier stage of its development and amputation would have been avoided.
*359 It thus became necessary for the jury to determine whether or not Mrs. Crisher would have undergone surgery in mid-1975 had Dr. Spak given her sufficient information for her to make an informed decision. The jury was, therefore, asked:
“(2) Would Mrs. Crisher have decided to have an operation in mid 1975 if, in June 1975:
“(a) Dr. Spak had advised her that surgery was necessary to determine the cause of her pain, swelling and nerve involvement?
“yes_ no_
“(b) Dr. Spak had advised her of the various possible causes of her pain, swelling and nerve involvement, including a tumor?
“YES _ NO _
“(c) If Dr. Spak had advised her of both (a) and (b)?
“yes_ no_”
Plaintiff argues that the issue for the jury is not what plaintiff herself would have decided had she been properly advised but, rather, what a reasonably prudent person would have decided — that is an objective standard. Defendant Spak maintains that for the plaintiff to recover, she had to establish that she would have undergone the surgery had she been given sufficient information — that is, a subjective standard should be used to determine what Mrs. Crisher’s individual decision would be. The court agrees.
As indicated above, plaintiff’s claim here is not based on surgery without informed consent but, rather, on the negligent failure of the doctor to provide to his patient the information necessary to make an appropriate decision. If a patient, this patient, irrespective of the information communicated to her by her doctor, would have refused surgery, then the doctor’s negligence caused no harm and there can be no recovery.
The jury was properly instructed with respect to the subjective standard and answered questions 2 (a), (b) and (c) in the affirmative.
*360 Dr. Spak maintains that the failure of plaintiff Arlene Crisher to testify that she would have consented to the operation, had Dr. Spak given her appropriate information, is fatal to her case.*
The court does not agree. It would have been helpful to plaintiff’s case and would have provided additional proof on which the jury could have based its answers had she testified in that manner. The jury, however, had an opportunity to observe plaintiff on the witness stand for a considerable period of time and to evaluate her intelligence and judgment. Further, the jury had proof with respect to her decisions relative to surgery in the latter part of 1974 and her postoperative treatment by Dr. Spak. In addition, there was proof relating to her actions in 1976 when X rays revealed the tumor and a biopsy was done. There was, in the view of the court, sufficient proof offered for the jury to answer question number 2 as it did.
DEPRIVATION OF A SUBSTANTIAL POSSIBILITY OF CURE — WAS THE JURY PROPERLY CHARGED?
Plaintiffs’ medical expert testified that in his opinion, with a reasonable degree of medical certainty, plaintiff’s tumor was smaller than five centimeters in June, 1975; had not yet invaded bone in July, 1975; and would, at that time, have been classified as a stage I tumor. It was his testimony that if discovered in July, 1975, the tumor could have been treated without the necessity of amputating plaintiff’s leg. Experts produced by defendant Spak expressed the opinion, also with a reasonable degree of medical certainty, that the delay of eight or nine months in discovering the tumor had no impact on either treatment or prognosis.
The question of causation in a medical malpractice case, based on a delay in diagnosis or a failure to treat, raises *361 unique problems. Certainly, the plaintiff is not required to establish that, without question, her leg would have been saved had her tumor been diagnosed eight months earlier. The issue, rather, is whether or not the negligence of the defendants deprived her of an appreciable chance of avoiding amputation. The court framed the issue in Kimbell v Scors (59 AD2d 984, 985) as follows: “whether there was a substantial possibility the decedent would have recovered but for the malpractice” and “whether the malpractice proximately deprived the decedent of that substantial possibility.”
Thus, in a medical malpractice case involving delay in diagnosis or failure to treat, all the plaintiff must establish is that defendant’s negligence was a proximate cause of a deprivation of a substantial possibility of cure or recovery. Here the jury was given an appropriate instruction with respect to proximate cause and charged that it had to determine whether or not the negligence of the defendants was a proximate cause of a deprivation of a substantial possibility of avoiding amputation, etc. The jury was charged in accord with accepted decisional law. The terms “substantial” and “possibility” were defined, respectively, as significant or realistic and capable of happening. If anything, the burden imposed on the plaintiff here, to prove a deprivation of a “substantial possibility” of cure, is a higher one than that discussed in Collins v New York Hosp. (49 NY2d 965, 967) where the court merely spoke of a deprivation of “an opportunity to have the condition surgically corrected.”

 Both defendants argue that it was reversible error for the court not to charge the jury that a negative inference could be drawn from the failure of plaintiff Arlene Crisher to testify that she would have undergone surgery if given adequate information by defendant Spak in June, 1975, or if surgical exploration was recommended by defendant Lehman in July, 1975. The authorities cited merely hold that this silence is a factor the jury could consider, but do not stand for the proposition that the court must so instruct the jury. Counsel for both defendants were free to raise this issue with plaintiff Arlene Crisher when she testified and to make appropriate comments during summation with respect to her failure to testify on this point. The court’s recollection is that they chose not to do so.